Good morning, Your Honors. Robert Ryan of Holland and Hart for the Meiling Defendants. Starting with the fee award in the Baker case recently, which Your Honors know about. Thank you for granting our motion. As you know, the district court in the Baker case awarded fees to the Meiling Defendants under section 12.2 of the operating agreement between the members of the LLC. And of course, as you know, the statute provides that MILLC is also a party to the agreement and bound by it. Now, section 12.2 is very, very simple. It's very straightforward. It says in the event that any party hereto, that's a party to the operating agreement, should commence legal proceedings to enforce any terms of this operation agreement, the prevailing party in the legal proceeding, the prevailing party, very simple, something we talk about in law all the time, shall be entitled to a reasonable sum as attorney's fees and costs as may be allowed by the court. Now, as Your Honors are probably well aware, in the Harris case and in the Alexander case, the court construed this provision to require that the Meiling Defendants must be the court held, the district court in Baker held correctly that these complaints are nearly identical. Okay? Now, with that as the fact, and since the attorney's fees were awarded in the Baker case, they should have been awarded under the same provision in the Alexander and the Harris cases. Okay? Per force. So, and looking at the complaints, as is well briefed, I believe, if you will see that they all allege the same things. They all allege that the Meiling Defendants were parties to the agreement. They all allege that they're bound by the agreement. They all allege breach by the Meiling Defendants. So, there's no reason it was legal error to deny the attorney fee award under Section 12.2 of the operating agreement. Are all of the Meiling Defendants part of the operating agreement? I thought there were some that were not. In the allegations of the complaint, they're all alleged to be members. In the Harris case, you only admitted that Kimeon and DSM were parties. That was the judicial decision. In which case, Your Honor? I'm sorry. In the Harris case. In the Harris case, it was admitted that Mr. it was admitted Mr. Meiling was a member, and it was it was alleged in the counterclaim that Kimeon was a member. But of course, the judicial admissions in the complaint filed by the plaintiffs are that all of the Meiling Defendants are members. That's binding on the court. It's binding on in the district court, and it's binding in the Court of Appeals. But if you only admit that some of the defendants are members, is that binding? If one side says all of them, your side says only three of them or two of them, which side do we have to, does the court have to follow? The plaintiffs are bound by their judicial admissions in their complaint. They cannot later deny it. It's notwithstanding that in an answer, a party might deny something. The plaintiffs cannot later deny what's in their complaint unless they move to amend, which they never did. And the reason they never did is because they wanted to seek attorney's fees against all the Meiling Defendants as well. Now, the answer, Your Honors might wonder, okay, who was a member and who wasn't, as a matter of fact, Mr. Ryan? The answer is we're not sure because the corporate records are messed up. After the receivership took place, corporate records went missing after it started. Corporate records went missing. So the Meiling Defendants have always relied upon the fact that Section 12, and that's not debated, by the way, the reliance factor is not debated in the briefing. It's uncontested that they relied on this to say, we're going to get attorney's fees eventually if you keep this up. Okay. And that's what the document says. And that takes me to another point, Your Honor, and that's the third party beneficiary point. Okay. This argument way, the third party beneficiary argument was never raised before the district court, was it? We did not present it because of the party presentation rule. In the original briefing before the district court, it was uncontested in the briefing in Harris that the Meiling Defendants were all parties to the operating agreement. That was not disputed. So we had no obligation to go further and say, well, if it's disputed somehow, and then go into third party beneficiary. Under the party presentation rule, we had no obligation to go further. Under due process, we had no obligation to go further. It was only in the Harris case, it was only when the court denied fees on the basis that the Meiling Defendants were not parties, shown to be parties, that we then came before the court and said, well, wait, Your Honor. First of all, under the party presentation rule, it was uncontested, and you have to accept that. Secondly, they were judicial admissions. And thirdly, even if they weren't bound, they're third party beneficiaries. Did you argue that on the motion to reconsider the third party beneficiary? We did. On reconsideration, Your Honor. Yes. Let me ask you this. I'm looking at the operating agreement. Yes. And at the end of the operating agreement, it says executed by each of the initial members on the date indicated by the following members and preferred, and then there's no listing. Now, is there a listing somewhere that's not included in the ER as to who the original members were? No. You just don't know what they are? There's not a complete listing, Your Honor. And that's because the records of the LLC, MILLC, were missing. A lot of them were missing. So exactly who signed and who didn't is not known. So what looks as though it should have been an attachment to the operating agreement, you just don't have? I do not have it. Okay. And... Sorry, can I follow? Does it make a difference if, I think, your side admitted that three of the Miling defendants are members? If we were to agree with that and say that they were entitled to fees, does it make a difference that, I think, two other defendants are not members? Another way of asking, is there separate fees for the different defendants? Or if we grant fees for the three that you admitted, are the two others covered? Possibly not. We haven't gotten to that stage of discovery and production of documents and possibly not. I can tell you this, the vast majority of the fees were paid by Mr. Miling and DSM and Cameon. Okay, those three defendants. And those are the three that you admitted were members of the... I believe that's correct. Although you're admitting that they're members is to your advantage. I'm not sure that helps, but what you're arguing is that they, in the complaint, they charge that they were members. That's the point. And of course, this Court's law is very firm on that. When you make an admission of fact like that in a complaint, you're bound unless you move to amend or explain it away somehow. And for years, they've had an opportunity to amend or explain it away, and they never have. They've never attempted to. And the reason they didn't is because they wanted to have it the other way around for themselves. The very premise of the complaint is that the reason they're bound by the operating agreement is that they're members. Yes. And they're charging in the complaint violation of the operating agreement. Exactly. Exactly, Your Honor. So that's why we think there was error in not granting fees either as members and people being accused of breach or as third-party beneficiaries. So I'll take my last few minute or so. You don't want to reserve anything for rebuttal? You know what? I think I'll reserve that time for rebuttal, Your Honor. Thank you. Thank you, Your Honor. Mark Laza for the respondents. None of what I just heard really is not—it's really pretty well addressed in our briefing. They are not parties to the operating agreement, and there are no judicial admissions made. Now, let me ask you this, and I already sort of signaled what my question to you is going to be. Your complaint was that they were obliged under the operating agreement to do certain things, and they didn't do it, correct? The only complaint— Is that correct? Which complaint are you referring to, Your Honor? Alexander? Which complaints do you want to talk about? Alexander is the only complaint that alleges a breach of contract claim, and that alleges a breach of the fiduciary duty. And was it premised upon the operating agreement? Honestly, Your Honor, my office did not file. It was predecessor counsel who filed that complaint. I don't know what it was premised on. I'm not asking what it was premised on. What was in the complaint? In the complaint was a breach of fiduciary duty, cause of action arising from a breach of fiduciary duty provision in an agreement between Dean Meilinger, one of his entities, and some of the—and MILLC, I believe. But I can't answer the question as to whether we were the— As I read the complaint, it alleges a breach of the operating agreement. I can't answer that, Your Honor. In Alexander, I don't know what it was— I would think that that would be a critical question. Why can't you answer that? I mean, you should have anticipated that question. A breach of the operating agreement was alleged in the Alexander case. I would assume that that's the only contract in existence between the parties, and I would assume that that's the contract that was at issue in that cause of action. If there's a breach of the operating agreement, that's the premise of a cause of action in the complaint, that sounds to me the only way that that can be so is that they're members. Otherwise, why are they in any way bound by the operating agreement? Because when the credit bid sale that occurred, they inherited all of MILLC's assets, they being Dean Meilinger and his various entities. That's not—I don't think that answers my question. If you're suing to enforce an obligation under the operating agreement, how can someone be violating the operating agreement if they're not a member and party to the operating agreement? They can't. In that scenario, they cannot. You're right, Your Honor. Unless potentially— Sounds like that's a necessary ingredient of the cause of action. Yes. You've conceded that they're members. Yes. Okay. Yes, absolutely. However, in light of the case law that says judicial admissions only apply to factual statements, not statements of law or conclusion, and particularly allegations of party intent, authority, and status in a contract or legal conclusions that the court is not bound to accept, those averments, if they were made in the Alexander complaint, are not judicial admissions that can be used against us. Moreover, to my knowledge, there were no— there was no request for attorney's fees in the Alexander complaint, to my knowledge. But I'd like to use a moment to discuss the differences between the three cases. Since counsel mentioned the Baker case, and that ruling is separately on appeal, the Alexander case seemed to have no particular definition of a class. By default, it comprised all of the class members, which would have been all of the investors in MILLC, regardless of their age and regardless of their residencies. That would have been over 900 people. When we inherited that case, it was indefinitely stayed. We filed the Harris case only on behalf of Mark Harris, who's perhaps the most actively involved investor. Mark Harris had represented himself in pro per in certain proceedings in related cases, and because of that representation, Judge Due ruled, which we feel was not an incorrect ruling, which is why we did not appeal it, that because he had objected to the credit bid sale in October of 2013, he was at least charged with knowledge of the sale at that time. Okay? That case was not appealed. Then we learned that there were elderly members also residing in Nevada, not just California. Harris was only supposed to subsume the California elderly residents. Baker was then filed to subsume California and Nevada. We separately interviewed these 51 named plaintiffs who told us they had nothing in their records, no emails, no correspondence, nothing regarding the credit bid sale. The only thing that some of them had was receipt of this March 2017 email, which we alleged in the complaint. That is the stark contrasts between the three classes. The overarching default class, which really includes everyone, the California elderly class, which alleges elderly abuse claims, which is recognized in both California and Nevada. Let me ask you this about the elderly. How old was Mr. Harris at the time the complaint was filed? Boy, that's a great question, but he was, I believe it's a 65 year. Well, that's what he alleges, but I'm not sure it's true. I'm asking you how old he actually was, not what he alleged. I don't recall, Your Honor. Is that a convenient I don't recall? I don't, I honestly don't recall. I know he's elderly. I know he's, I know he's, I'm going to assume he's in his late 60s at this point. I don't think he's reached 70. You were not the attorney when that complaint was filed? When which complaint? The Harris one. Yes, we were. Yes. And we were at counsel in Baker as well. Those are the two cases that my my office filed. But again, the stark differences is the Harris case was only meant to subsume the California elderly residents who Mark Harris was was the only one named who participated in judicial proceedings. That's why we excluded him from the class definition in Baker, because everyone who's not have notice of the credit bid sale. That's the definition of that class. Did Mr. Harris admit to the court that he was not entitled to bring an elder fraud claim because he did not meet the requisite age? I don't recall that, Your Honor. It's part of the record. I'm not sure what Your Honor is referring to. There are a lot I don't recall here, because my recollection of the record is that he was not 65. If if what you're recalling to is something is recalling is something that Mr. Harris stated to the court that would have been in a prior proceeding where he represented himself and probe her. That would have been years before either Harris or Baker was filed. Wasn't that part of the judge's decision in dismissing that claim? Was on statute of limitations grounds. The Harris claim. And there was there was a discussion about the eligibility for Mr. Harris to bring that claim. The only thing I recall about that decision, Your Honor, is that it was untimely. And the extent to which Mr. Harris did or did not qualify as elderly at the time it was filed, I don't honestly don't recall that. I know he's elderly. It certainly was discussed in connection with the fee dispute in this case. I'm sorry. It was discussed in connection with the fee dispute. The fee dispute being the attorney's fees. Yes. What I can tell you about when there was a discussion of whether the case was groundless or vexatious. It was pointed out to the court that there had been the Alexander filing and it was stayed. And then mysteriously, Mr. Harris brings his claim and adds to all of the other claims that were brought in Alexander, the representation that he has this elder fraud claim, which a surprise gets priority on the court's docket. It does, Your Honor. And what the court concluded is that it would be logically quite difficult for the court to find this, meaning Harris, the first filed case, excuse me, this being Alexander, the first filed case frivolous or groundless when it declined to find the second filed case in this series, Harris frivolous. That's what the court found in response to that determination regarding privity to the operating agreement. Chemion did not even exist. The main appellant did not even exist until two years after the LLC dissolved. So how can you be party to an operating agreement of a company that does not exist? Also, the case law is clear and so are the Nevada revised statutes that an operating agreement itself is not an asset of the company that transfers. So by virtue of the credit bid sale, there was not an acquisition of the operating agreement. The operating agreement is simply a governance document. The receiver dissolves MILLC. Mr. Meiling then formed a company, another company, and another company that ultimately became Chemion. But MILLC was never part of the mix. So there's not any appellants that are privy to the operating agreement, much less do they have standing to enforce section 12.2. In regard to third-party beneficiary status, you can't obviously be a third-party beneficiary on one hand and a party to the contract on the other. Nevertheless, this is a very general provision that did not expressly name any of the appellants, and you have to do that in order to attain third-party beneficiary status. It would not necessarily. I mean, third-party beneficiary, any intended beneficiary is a third-party beneficiary, whether named or not. Intended, yes. Typically, courts like to see an express name. I understand that. But there was no intent here. But that's not a requirement of the doctrine. All you need to show is intended. Understood, Your Honor. But there's no evidence that there was any contemplation of Dean Meiling. And by the way, the page that Your Honor pointed out, those were all the original members. We know of no other original members. Dean Meiling came on much, much later. The page I pointed out says they're all the original members. And then I asked, who are they? And there's nothing there. The original member, as far as my understanding goes, was only David Simas. The original member of the LLC was David Simas. He then began selling off membership interests to the various investors of MI LLC. That's entirely inconsistent with what that bottom says. It says there's an attached list of members, and then there's no list. I think the reason for that, Your Honor, is because this was a form used, and that template language was just not removed from that agreement, as typically happens. Cancel your overtime if you want to wrap up. Yes, there was just one point I wanted to make, in that, to point out the different positions that they took. On one hand, when they were trying to enforce the attorney's fees clause based on privity, they say that Harris was a different case involving different factual allegations, different legal claims, a different litigation history, and different briefing on the respective motions for attorney's fees. That's in 6 ER 1106209. When they're trying to argue repetitiveness and harassment and vexatiousness, they argue Harris was a very similar class action involving a very similar allegedly fraudulent scheme, and that these two actions are essentially duplicative and involve the same allegations. They basically cut both ways, and whenever it's convenient for their argument, they say the cases are similar and thus harassing. When they want to argue contractual fees, they say these cases are different. They have a different history and involve different facts. Thank you, Counsel. We have your article. Mr. Ryan? I'll make a brief. I would like to point out, as you know, there's a lot of briefing that we're not going to be able to talk about in this time allotted, which is common, of course, typical. But the point is, virtually everything you just heard in reply, we thoroughly disagree with, and much of it's not contested in our favor. So, for example, the argument that it's the discussion about the Alexander complaint. The Alexander complaint specifically alleged, as did the Harris complaint, as did the Baker complaint, that the Miling defendants were members of the LLC, that they were bound by it, that they were in breach. By the way, the contract formation and whether a party is bound by a contract, those are questions of fact, not law, under this court's law and in Nevada law, all cited in the briefs. So those are binding judicial admissions they cannot get around. One point I'd like to, I didn't get to before, and I'll make this very quickly. This case should never have been brought in any form, Alexander, Baker, Harris. The Barton Doctrine precludes it, okay? That's 19th century law. The Rooker-Feldman Doctrine precludes it. To this day, they've never sought, under the Barton Doctrine, approval to go after the receiver, much less all the other parties that are involved in the action, all of whom are protected by the Barton Doctrine. This case was groundless the day it was brought. Thank you, counsel. This case will be submitted.
judges: FLETCHER, BUMATAY, Kane